UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

COUNTYLINE TRANSMISSION, LLC,

     Plaintiff,

vs.

COTTMAN TRANSMISSION SYSTEMS,     CASE NO.
LLC; AMERICAN DRIVELINE
CENTERS, INC.; and AAMCO
TRANSMISSIONS, INC.,

     Defendants.

_____/

## COMPLAINT

Countyline Transmission, LLC ("Countyline") files its Complaint against Cottman

Transmission Systems, LLC ("Cottman"), American Driveline Centers, Inc. ("ADC"), and

AAMCO Transmissions, Inc. ("AAMCO") (collectively, the "Franchisor") and in support

thereof states the following:

### Parties and Jurisdiction

1.     Countyline is a Florida limited liability company doing business in Pinellas

County, Florida.

2.     Upon information and belief, Cottman Transmission Systems, LLC is a

Delaware limited liability company with its principal place of business in Horsham,

Pennsylvania.

TA.165484.6

3.     Upon information and belief, American Driveline Centers, Inc. is a Pennsylvania corporation with its principal place of business in Fort Washington, Pennsylvania, and is an affiliated entity of Cottman.

4.     Upon information and belief, AAMCO Transmissions, Inc. is a Pennsylvania corporation with its principal place of business in Horsham, Pennsylvania, and is an affiliated entity of Cottman.

5.     Complete diversity exists between the parties, and the amount in controversy exceeds $75,000, exclusive of interest and costs.   Therefore, this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332.

6.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391.

## Sale of the Franchise

7.     Beginning in August 2006, Countyline began discussions with John Conway ("Conway") regarding the purchase of a Cottman franchise.

8.     Conway held himself out as a representative of Cottman and AAMCO and as the Director of Franchise Sales for the two related entities.

9.     In his representative capacity, Conway made representations to Countyline in order to facilitate the sale of a Cottman franchise.

10.     Of particular interest to Countyline, Conway represented that the purchase and temporary operation of a Cottman franchise would enable Countyline to convert the Cottman franchise into an AAMCO franchise, and that such converted franchise could be operated at a nearby location.

2

11.     Conway encouraged Countyline to purchase an existing Cottman franchise located at 3166 Tampa Road, Oldsmar, Pinellas County, Florida (the "Center"), which was owned by ADC.

12.     Based on Conway's representations, Countyline believed that ADC and Conway were both acting on behalf of and as agents of the Franchisor.

13.     Countyline was informed by Conway that this franchise was offered to Countyline because sale of the Center would confer a benefit on the Franchisor by (a) preventing the loss of any remaining goodwill associated with the Center since it was abandoned by its prior manager/operator; and (b) allowing the transmission repair equipment located at the Center to be put to its intended use.

14.     Furthermore, the Franchisor was concerned that the location of the Center would be leased to a different business (or a non-Cottman brand shop) since the Center was not currently operating.   The landlord of the Center had informed Conway that if the franchise resale did not occur, the Center's location might be sold and used for purposes other than a Cottman franchise.   Therefore, the Franchisor desired to immediately sell this particular franchise.

15.     Due to the Franchisor's personal financial concerns and desire to make an immediate sale, the Franchisor exerted excessive pressure on Countyline to execute a Purchase Agreement and take over the current lease.

16.     Conway informed Countyline that while conversion from a Cottman franchise to an AAMCO franchise at the Center's existing location was not assured, Countyline would be permitted to convert to operations as an AAMCO franchise at a location in the area around

3

the intersection of Commerce Boulevard and Tampa Road in Oldsmar—approximately 2 miles from the existing location of the Center (but still within Pinellas County) (the "Promised Conversion Area").

17.     Knowing this was a fundamental selling point, Conway assured Countyline prior to the execution of the Purchase Agreement that the parties' franchise agreement (referred to by the Franchisor as the "License Agreement") would reflect its right to convert within the Promised Conversion Area.

18.     Other negotiated terms that Conway led Countyline to believe would be included in the License Agreement were: (a) that Countyline could control its own local advertising; (b) that Cottman would provide assistance, by itself or through its designee, to Countyline in obtaining insurance as required under the Licensee agreement, including but not limited to garage keeper's liability insurance; and (c) that Richard Hoover, the managing member of Countyline, would not be a party to or be required to guarantee the franchisee's obligations (collectively, "the Negotiated Terms").

19.     In addition to the Negotiated Terms, Conway made other representations to Countyline in order to secure the sale of the Center, including (a) statements regarding the value of the Cottman name; (b) the value of the "yellow pages advertising" and the high level of sales the "yellow pages advertising" would generate; (c) promises regarding certain equipment that would be included in the sale (in addition to the equipment referenced in Section 1.3 of the Purchase Agreement); (d) statements regarding the franchise advertising program and the scope of the advertising fund activities; (e) assurances regarding the likelihood of commercial sales; (f) statements regarding projected sales revenue; (g)

representations regarding the past performance of other Cottman franchisees; and (h) promises to produce all the past business records of the Center.

20.    These representations have all proven to be false or gross overstatements.  In fact, Countyline's current customer base has been developed almost solely by referrals from other auto repair centers and the personal contacts of Countyline's principal owner.

21.    In reliance on the Negotiated Terms and other representations, Countyline executed the Purchase Agreement with ADC on September 29, 2006.  A copy of the Purchase Agreement is attached as Exhibit "A."

22.    Due to the Franchisor's concerns about losing the right to lease the Center, Countyline was rushed into this transaction prior to the Franchisor being prepared to enter into a License Agreement for the Center that reflected the pre-sale promises made by Conway and the Franchisor.

23.    As a result, the Purchase Agreement calls for a closing (execution of the Franchise Agreement/License Agreement) on or before November 3, 2006.

24.    After the Purchase Agreement was executed, but before execution of the License Agreement, Countyline was rushed into paying monies prior to the execution of the applicable License Agreement.

25.    The Purchase Agreement provided that the following payments would be made:  $56,000 fee to ADC for the Center and certain equipment (Section 3.1); $3,000 Training Fee to Cottman on or before October 16, 2006 (Section 3.1(J)); $6,000 Transfer Fee to Cottman at closing (Section 3.1(K)); and $5,000 Warranty Fee to the Cottman Warranty Escrow Fund at closing.

TA.165484.6

26.     Although the Purchase Agreement stated otherwise, all monies were paid, at the Franchisor's request, directly to Cottman, including a $15,000 fee as described in Section 2.1(a) of the Purchase Agreement.  Cottman later notified Countyline that such fee was being applied to the Training Fee, Transfer Fee, and Warranty Fee.

27.     The Purchase Agreement contained certain conditions precedent for closing, including but not limited to the condition that "BUYER and COTTMAN enter into a then current License Agreement for the operation of the Center."

28.     In the Purchase Agreement, the Franchisor also agreed to comply with all applicable laws relating to the sale of the Center as stated in the Purchase Agreement.

29.     In spite of all the irregularities prior to the Purchase Agreement, Countyline intended and fully expected the parties to successfully negotiate the terms of the License Agreement, including all the promises and representations made by Conway, i.e., the Negotiated Terms.

30.     However, following execution of the Purchase Agreement, the Franchisor failed to present Countyline with a signature-ready License Agreement prior to the closing date (November 3, 2006) specified in the Purchase Agreement.

31.     The License Agreement presented to Countyline prior to the required closing date did not contain the Negotiated Terms.

32.     In order for the Franchisor to execute the License Agreement in compliance with applicable law, it would have been required to provide a Franchise Offering Circular ("FOC") to Countyline in accordance with the FTC Rule.  When the Franchisor did present the FOC, it was deficient in several respects.  A copy of the FOC is attached as Exhibit "B."

6

33.     The FOC that was provided to Countyline by the Franchisor was dated February 14, 2006. The information contained in the FOC was over six months old by the time the FOC was given to Countyline in the fall of 2006.

34.     The Franchisor has never provided Countyline with an updated FOC that meets all of the requirements of federal law.

35.     The Franchisor's failure to provide an updated FOC coupled with its seeking to execute the License Agreement violates the applicable franchise laws and places Countyline in detriment:   Countyline has been denied and is being denied information material to its investment decision.

36.     Even if the FOC had been timely provided, the offer and sale of License Agreement/Franchise using an FOC with outdated information does not comply with the applicable franchise laws.   Accordingly, the Franchisor failed to meet the conditions precedent to the Purchase Agreement—to close the sale by November 3, 2006, in a legally compliant manner.

37.     Following execution of the Purchase Agreement, Countyline contacted Cottman's designated insurance agent to obtain the garage keeper's liability insurance mandated by the License Agreement. Cottman's designated agent stated that he did not believe such insurance was available in Florida and was unable to provide recommendations to Countyline where such insurance could be procured. Because of Cottman's inability to perform in assisting Countyline's to obtain the required insurance, Countyline could not have executed the License Agreement on November 3, 2006, in compliance with its terms.

38.     The License Agreement, Section 7.2, <u>Remedies for Breach</u>, provides that "In the event SELLER fails to perform or breaches any provisions of the Agreement, BUYER shall be entitled to a refund of all deposit monies paid hereunder."

39.     Even though the Franchisor still had not provided Countyline with signature-ready franchise documents that included the potential to convert to an AAMCO franchise in the Promised Conversion Area, the Franchisor pressured Countyline into paying $56,625 directly to Cottman rather than to ADC as provided for in the Purchase Agreement. The payment was made on or about December 26, 2006. Such fees represent the remainder of the "deposit monies" described in Section 7.2 of the Purchase Agreement.

40.     Once Cottman received money from Countyline, Countyline was informed that Cottman's proposed conversion relocation area was not to be within the Promised Conversion Area, but rather an area more than 5.5 miles from the current location and in another county. This proposal, a "bait and switch," completely contradicts the original deal offered to Countyline.

41.     The Franchisor has insisted that Countyline agree to a License Agreement that does not include the Negotiated Terms, and the Franchisor has not provided Countyline with an updated FOC that includes all material changes that have occurred since it was first provided to Countyline.

42.     In April 2007, Countyline retained counsel. Prior to that time, Countyline had engaged in negotiations with the Franchisor on its own behalf.

43.     Countyline's attorney advised Countyline of its rights under the Purchase Agreement and regarding its franchise losses.

8

44.     As a result of discussions with the Franchisor's counsel, Countyline's attorney sent a proposal to the Franchisor on April 26, 2007, in an attempt to memorialize the terms of the License Agreement, including all the previously Negotiated Terms and the right to convert to an AAMCO franchise within the Promised Conversion Area.

45.     Unfortunately, due to a clerical error, Countyline's proposal was not received by the Franchisor. It was sent to the wrong address.

46.     On or about Friday, May 4, 2007, without warning to Countyline and without requesting the status of Countyline's proposal, the Franchisor implemented the heavy-handed tactic of instructing the telephone company providing service to the Center, Verizon, to terminate phone service to the Center. This termination order was issued even though Countyline had paid the Franchisor for the phone service and had never consented to the Franchisor's right to disconnect it.

47.     Upon information and belief, the Franchisor caused the discontinuance of phone service to Countyline in an effort to force Countyline to agree to terms of the License Agreement that did not include the Negotiated Terms.

48.     After reviewing Countyline's April 26, 2007, proposal, the Franchisor sent a counter-proposal on May 16, 2007. The counter-proposal was nearly a complete rejection of the Negotiated Terms and attempted to introduce all new terms.

49.     After learning that its proposal had not been received, Countyline resent the proposal to the Franchisor.

50.     Furthermore, the Franchisor effectively cut off negotiations by demanding Countyline's best and final offer by May 18, 2007.

9

51.     In light of the Franchisor's counter-proposal, the parties' positions are clearly irreconcilable, and therefore, Countyline has instituted this action.

## COUNT I
## Breach of Contract

52.     Countyline realleges and incorporates paragraphs 1 through 51 as if fully set forth herein.

53.     Pursuant to the Purchase Agreement, there were certain conditions precedent to the sale and purchase of the Center.  The Franchisor breached the Purchase Agreement by:

    a.     failing to review and approve the lease agreement prior to it being executed;

    b.     failing to enter into a current License Agreement for the operation of the Center; and

    c.     failing to comply with all applicable laws relating to the sale and purchase contemplated by the Purchase Agreement.

54.     As a result of the Franchisor's breaches of the Purchase Agreement, Countyline has been damaged.

WHEREFORE, Countyline demands judgment against the Franchisor for damages and such other and further relief as the Court deems just and appropriate.

## COUNT II
## Fraud in the Inducement

55.     Countyline realleges and incorporates paragraphs 1 through 51 as if fully set forth herein.

56.     The Franchisor, directly or through John Conway, made several false statements concerning a material fact to Countyline, including:

10

a.   Stating that the Center could be converted to an AAMCO franchise at within the Promised Conversion Area when in reality the Franchisor knew that conversion of the Center would require relocation to an area outside of Countyline's area of interest;

b.   Stating that the temporary operation of the Cottman Center at the current location would allow the opportunity to build up a portable client base;

c.   Making implied or express statements regarding the values of the Center, including statements regarding the inherent value of the Center being a Cottman franchise and the yellow pages advertising;

d.   Ensuring that certain equipment and supplies located at the Center were included in the purchase;

e.   Making false and grossly overstated claims regarding the potential sales revenues and the potential customer base;

f.   Overstating the viability of the advertising fund and the scope of the advertising activities;

g.   Promising to produce all prior business records for the Center;

h.   Promising that the Negotiated Terms would be included in the License Agreement; and

i.   Stating that Cottman had the ability to arrange for or assist Countyline with the procurement of garage keeper liability insurance.

57.   The Franchisor knew these statements were false.

58.   The Franchisor intended these statements to induce Countyline to act upon the statements and enter into the Purchase Agreement.

59.   Relying on the false statements, Countyline moved forward with the purchase of the Center and entered into the Purchase Agreement

60.   As a result of the Franchisor's actions, Countyline has been damaged.

11

TA.165484.6

WHEREFORE, Countyline demands judgment against the Franchisor for damages and such other and further relief as the Court deems just and appropriate.

## COUNT III
## Fraudulent Misrepresentation

61.     Countyline realleges and incorporates paragraphs 1 through 51 as if fully set forth herein.

62.     The Franchisor, directly or through John Conway, made several false statements concerning a material fact, including:

a.      Stating that the Center could be converted to an AAMCO franchise at within the Promised Conversion Area when in reality the Franchisor knew that conversion of the Center would require relocation to an area outside of Countyline's area of interest;

b.      Stating that the temporary operation of the Cottman Center at the current location would allow the opportunity to build up a portable client base;

c.      Making implied or express statements regarding the values of the Center, including statements regarding the inherent value of the Center being a Cottman franchise and the yellow pages advertising;

d.      Ensuring that certain equipment and supplies located at the Center were included in the purchase;

e.      Making false and grossly overstated claims regarding the potential sales revenues and the potential customer base;

f.      Overstating the viability of the advertising fund and the scope of the advertising activities;

g.      Promising to produce all prior business records for the Center;

h.      Promising that the Negotiated Terms would be included in the License Agreement; and

TA.165484.6

     i.   Stating that Cottman had the ability to arrange for or assist Countyline with the procurement of garage keeper liability insurance.

63.   The Franchisor knew these statements were false.

64.   The Franchisor intended these statements to induce Countyline to act upon the statements, enter into the Purchase Agreement, pay monies to the Franchisor, and operate the Center.

65.   Relying on the false statements, Countyline executed the Purchase Agreement, paid monies to the Franchisor, began operating the Center, attempted to develop a client base, and overcame the negative good will generated by the previous manager/operator.

66.   As a result, Countyline has suffered injuries by the actions of the Franchisor.

WHEREFORE, Countyline demands judgment against the Franchisor for damages and such other and further relief as the Court deems just and appropriate.

## COUNT IV
### Unjust Enrichment

67.   Countyline realleges and incorporates paragraphs 1 through 51 as if fully set forth herein.

68.   Countyline has conferred a benefit on the Franchisor through the payment of monies to Cottman, the continuing operation of the Center, and by overcoming the negative good will generated by the Center's prior manager/operator.

69.   The Franchisor has knowledge of the benefits conferred by Countyline and has voluntarily accepted and retained the benefits conferred.

TA.165484.6

70.     The circumstances are such that it would be inequitable for the Franchisor to retain the benefits conferred by Countyline without paying the value thereof.

WHEREFORE, Countyline demands judgment against the Franchisor for damages and such other and further relief as the Court deems just and appropriate.

## COUNT V
## Violation of Florida Franchise Misrepresentation Act

71.     Countyline realleges and incorporates paragraphs 1 through 51 as if fully set forth herein.

72.     Pursuant to § 817.416(2)(a), Fla. Stat., it is unlawful, when selling or establishing a franchise or distributorship, for any person:  (a) to intentionally misrepresent the prospects or chances of a proposed or existing franchise or distributorship; or (b) to intentionally misrepresent or fail to disclose efforts to sell or establish more franchises or distributorships than is reasonable to expect the market or market area for the particular franchise or distributorship to sustain.

73.     By knowingly making false and grossly overstated claims regarding the potential sales revenues and the Center's chances of success, the Franchisor violated § 817.416(2)(a), Fla. Stat.

74.     The Franchisor misrepresented the potential sales revenues and the Center's chances of success with the intent to induce Countyline to enter into the Purchase Agreement, take over the lease, and operate as a Cottman franchise.

75.     The Franchisor further misrepresented the number of AAMCO franchises that could be put into Countyline's area of interest, including the Promised Conversion Area, with

14

the intent to induce Countyline to enter into the Purchase Agreement, take over the lease, and operate as a Cottman franchise and/or a converted AAMCO franchise.

76. Countyline reasonably relied upon the Franchisor's intentional misrepresentations when it entered into the Purchase Agreement, took over the lease, and continued operations at the Center.

77. As a direct and proximate result of the Franchisor's material misrepresentations, Countyline suffered injury.

78. Countyline is entitled to the return of all monies invested in the Center and paid to the Franchisor, including reasonable costs and attorney's fees, pursuant to § 817.416(3), Fla. Stat.

WHEREFORE, Countyline demands judgment against the Franchisor for damages and such other and further relief as the Court deems just and appropriate.

## COUNT VI
### Violation of the Florida Deceptive and Unfair Trade Practices Act

79. Countyline realleges and incorporates paragraphs 1 through 51 as if fully set forth herein.

80. At all material times, Countyline was a business and a consumer as defined by § 501.203(7), Fla. Stat.

81. It is a per se violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUPTA") to violate the Federal Trade Commission Act ("FTC Act") pursuant to § 501.203(3), Fla. Stat.

TA.165484.6

82.     Pursuant to the FTC Act, 16 C.F.R. Part 436.1, et seq., the Franchisor was required to provide Countyline with an Uniform Franchise Offering Circular ("UFOC") prior to entering into any contracts with Countyline.

83.     The FTC further requires that the UFOC be updated every 90 days to include any material changes.

84.     The Franchisor knowingly violated the FTC Act and FDUPTA by:

    a.    Failing to provide Countyline with a current and up-to-date UFOC before entering into the Purchase Agreement;

    b.    Failing to include unaudited financial statements dated within 90 days of the date of the UFOC;

    c.    Failing to accurately describe the owner of the Center in the UFOC;

    d.    Failing to include the conversion documents that were promised to Countyline for converting to an AAMCO franchise in the UFOC;

    e.    Failing to differentiate the fees and costs of purchasing a Cottman-owned center in the UFOC;

    f.    Failing to include the earnings claims for 2005 and 2006 in the UFOC;

    g.    Failing to give Countyline an UFOC meeting all the FTC requirements at least 10 business days prior to Countyline paying monies to the Franchisor; and

    h.    Failing to give Countyline all signature-ready documents at least five business days prior to Countyline paying monies to the Franchisor.

85.     As a direct and proximate result of the Franchisor's actions, Countyline suffered injury.

86.     Pursuant to §§ 501.211 and 501.2105, Fla. Stat., Countyline is entitled to recover its actual damages, attorney's fees, and court costs.

16

WHEREFORE, Countyline demands judgment against the Franchisor for damages and such other and further relief as the Court deems just and appropriate.

## COUNT VII
### Violation of the Florida Sale of Business Opportunity Act

87.     Countyline realleges and incorporates paragraphs 1 through 51 as if fully set forth herein.

88.     To the extent the Purchase Agreement does not include the exercise of a franchise agreement, the Purchase Agreement is a business opportunity.

89.     If there is no implied license or no license agreement in effect, the Purchase Agreement standing alone violates the provisions of § 559.801, Fla. Stat.

90.     The purchase of the Center was a business opportunity pursuant to § 559.801(1)(a), Fla. Stat., because the Franchisor:

    a.     offered and/or solicited Countyline with the opportunity to purchase a franchise;

    b.     required an initial payment in excess of $500 for the opportunity to purchase the franchise;

    c.     represented that Countyline's purchase of a Cottman Franchise would likely earn in excess of the initial payment; and

    d.     provided Countyline with a sales, production, and marketing program.

91.     Pursuant to § 559.803, Fla. Stat., the Franchisor was required to provide Countyline with a disclosure statement at least three days prior to the time Countyline was going to sign any of the contracts to purchase the business opportunity or three days prior to the Franchisor's receipt of consideration (whichever occurs first).

TA.165484.6

92.     The Franchisor failed to provide Countyline with any disclosure documents in violation of § 559.803, Fla. Stat., and the FTC Rule, 16 C.F.R. Part 436.

93.     The Franchisor was not and is not exempt from providing Countyline with the disclosure statement.

94.     Countyline would not have entered into the Purchase Agreement had the Franchisor provided the disclosure statement, and as a direct and proximate result of the Franchisor's failure to produce the disclosure statement, Countyline suffered injury.

95.     Pursuant to § 559.813(3), Fla. Stat., Countyline is entitled to the recovery of damages, including reasonable attorney's fees.

WHEREFORE, Countyline demands judgment against the Franchisor for damages and such other and further relief as the Court deems just and appropriate.

## COUNT VIII
## Declaratory Judgment

96.     Countyline realleges and incorporates paragraphs 1 through 51 as if fully set forth herein.

97.     Countyline sue the Franchisor in this action for declaratory judgment, pursuant to Chapter 86, Florida Statutes, to determine a question of actual controversy between the parties.

98.     There exists an actual controversy between Countyline and the Franchisor involving their rights and obligations under the Purchase Agreement, and therefore, the parties have a need for a determination by this Court of the rights and obligations, if any, of the parties under the Purchase Agreement.

TA.165484.6

99.     After signing the Purchase Agreement, Countyline took ownership of and begin operating the Center.  The Franchisor has failed to comply with its obligations under the Purchase Agreement and pursuant to the representations made by Conway to induce Countyline's entry into the Purchase Agreement.

100.    Pursuant to Section 7.2 of the Purchase Agreement, the Franchisor's failure to comply with its obligations under the Purchase Agreement constitutes a breach of that agreement which entitles Countyline a refund all deposit monies paid to the Franchisor.

101.    The ability of Countyline to continue to operate the Center under a name different than Cottman or AAMCO is a dispute involving the rights and liabilities under the Purchase Agreement and for which the parties are presently in doubt, and the parties have an actual and bonda fide need for a determination by this Court as to the parties' rights and liabilities under the Purchase Agreement.

102.    The only parties claiming an interest through the Purchase Agreement are the parties to this action.

WHEREFORE, Countyline demands a declaratory judgment against the Franchisor declaring and adjudicating that Countyline has the right to operate and manage the Center under a name different than Cottman or AAMCO.  Countyline further demand a declaratory judgment against the Franchisor declaring and adjudicating that the Franchisor breached the Purchase Agreement, and as a result, Countyline has a right to the return of all deposit monies paid to Cottman.

TA.165484.6

**COUNT IX**
**Request for Injunctive Relief**

103.    Countyline realleges and incorporates paragraphs 1 through 51 as if fully set forth herein.

104.    The Franchisor has engaged in activities that have caused and continue to cause harm to Countyline's business and reputation.  Specifically, the Franchisor has on at least one occasion caused Verizon to automatically re-direct all telephone calls to Countyline's phone number to another entity, one of the Franchisor's franchisees.  The Franchisor's actions were taken despite the fact that Countyline has itself paid the Verizon telephone bill at all times relevant to this action.

105.    After Countyline complained about the re-direction of its phone lines, the Franchisor relented and instructed Verizon to re-connect Countyline's telephone line. However, the Franchisor's actions resulted in Countyline losing several days of telephone access and business.

106.    Countyline is attempting to mitigate its damages, preserve the status quo between the parties, and prevent the Franchisor from causing further harm to Countyline's reputation and business interests.

107.    There is no adequate remedy at law to prevent the Franchisor's wrongful conduct should the Franchisor again re-direct or disconnect Countyline's telephone line while this litigation is pending, nor is there an adequate remedy at law to compensate Countyline for the damage to its reputation and business interests.

108.    There is a substantial likelihood that Countyline will prevail on the merits of its case, and that Countyline will suffer harm during the pendency of this litigation if the

TA.165484.6

injunction is not granted. Further, any potential harm to the Franchisor is far outweighed by the threat faced by Countyline. The public interest in the enforcement of contracts will be served by the grant of injunctive relief.

WHEREFORE, Countyline requests that the Court grant preliminary and permanent injunctive relief restraining the Franchisor from re-directing or disconnecting Countyline's business telephone number, (727)785-9396, during the pendency of this litigation and unless the Franchisor obtains an order from the Court specifically authorizing the Franchisor to do so.

## DEMAND FOR JURY TRIAL

Countyline hereby demands a trial by jury of all issues so triable.

Dated: May 22, 2007

Respectfully submitted,

**PHELPS DUNBAR LLP**

Scott P. Weber, Fla. Bar No.: 125105
scott.weber@phelps.com
John D. Mullen, Fla. Bar No.: 32883
john.mullen@phelps.com
Bret M. Feldman, Fla. Bar No.: 370370
bret.feldman@phelps.com
100 South Ashley Drive • Suite 1900
Tampa, Florida 33602-5311
(813) 472-7550
(813) 472-7570 (FAX)

ATTORNEYS FOR PLAINTIFF
COUNTYLINE TRANSMISSION, LLC

21